UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SCOTT EDWARD ICKES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW SAUL, )<br>Commissioner of the Social Security )<br>Administration )<br>)<br>Defendant. ) | Cause No. 1:20-CV-4-PPS |

**OPINION AND ORDER**

Scott Ickes appeals an administrative law judge's denial of his application for Social Security Insurance benefits. In doing so, he argues that the ALJ failed to build a logical bridge between the evidence in the record and her determination of Ickes's residual functional capacity (RFC). After reviewing the record, I conclude that the ALJ properly considered the evidence and built a logical bridge between the evidence and her RFC finding.

**Background**

Scott Ickes applied for disability insurance benefits in 2016, claiming that he was disabled as of March 7, 2008. [AR 22.][1] As of this alleged onset date, Ickes was 41 years old and had completed high school. [AR 42.] Ickes previously worked at Walmart as a retail sales clerk with some janitorial duties; he also had duties at Walmart that included

---

[1] The Administrative Record (AR) in this case is found at Docket Entry #12. Citations reference the Bates stamp page number in the lower right-hand corner of the AR.

cart attendant and inventory clerk. [DE 14, 4; AR 43, 57.] Ickes quit his job at Walmart in 2008 because he "didn't like how management was running the store[.]" [AR 44.] Ickes has been unemployed ever since.

In December 2016, Ickes sought SSI benefits claiming his disabilities included diabetes mellitus type 2, which involved secondary problems of nephropathy and neuropathy, coronary artery disease, congestive heart failure, hyperlipidemia, hypertension, obesity, lumbar degenerative disk disease, lumbar spondylosis, back pain, and major depressive disorder. [DE 14, 5-8.] With respect to daily activities, Ickes claims that he can perform light housework until his back pain intensifies. [AR 49-50.]

The ALJ issued her decision denying Ickes benefits on November 29, 2018. [AR 19-36.] He sought review from the Appeals Council in December 2018 but was denied on October 30, 2019. [AR 1-5.] In her decision, the ALJ engaged in the required five-step evaluation to determine whether Ickes was disabled. At step one, the ALJ considered whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). The ALJ determined Ickes had not engaged in substantial gainful activity since December 2, 2016, the date of his application. [AR 24.] At step two, the ALJ considered whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. § 404.1520(c). The ALJ determined that Ickes had several severe impairments, including: obesity, chronic kidney disease, lumbar degenerative disease, diabetes mellitus, and congestive heart failure. *Id.* At step three, the ALJ considered whether the claimant's impairment or

combination of impairments meets or medically equals one of the applicable Social Security listings. 20 C.F.R. § 404, Subpart P, Appendix 1, 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. The ALJ found that this combination of impairments did not meet or medically equal the severity contemplated by the Listings. *Id.* at 27.

The ALJ then determined Ickes's residual functional capacity and found that he was able to perform light work with certain limitations: never climbing ladders, ropes, or scaffolds, occasionally climbing stairs/ramps, balancing, kneeling, crouching, and crawling, may tolerate frequent exposure to extreme heat and cold, humidity and respiratory irritants. [AR 28.] The ALJ posed hypothetical and follow-up questions to a vocational expert who testified that a claimant with the limitations posed could work in certain jobs such as a retail marker, cashier, and dining room attendant. [AR 32, 57-60.] The ALJ found Ickes incapable of working past relevant work, but able to perform other light work positions as described by the vocational expert. [AR 32, 59.] Therefore, the ALJ found Ickes was not disabled within the meaning of the Social Security Act. [AR 32.]

## Discussion

As a district court judge, it is not for me to determine whether Ickes is disabled. That's for the Social Security Administration to decide. My task is limited to reviewing the ALJ's ruling to determine whether she applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012). The review of the ALJ's decision is a

light one. This is because the Supreme Court has held that the "substantial evidence" standard is a low bar; it is even less than a preponderance of the evidence standard. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004). If the ALJ's factual determinations are not supported by substantial evidence, then the decision should be reversed. *See* 42 U.S.C. § 405(g). My review is guided by the fact that the ALJ need not address every piece of evidence but must build a "logical bridge" between the evidence and her findings and adequately discuss the issues so that I can evaluate the validity of the agency's findings. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The claimant bears the burden of proving a disability and presenting medical evidence supporting his allegations. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); 20 C.F.R. § 416.912(a). He must show through medical and non-medical records that his impairment or combination of impairments are severe. If the ALJ determines that the claimant has satisfied these first two steps, but his impairments do not meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, the ALJ must consider the claimant's RFC to determine whether he can perform any past work or other gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The RFC identifies the most a claimant can do within a work setting despite his physical or mental limitations. 20 C.F.R. 404.1545(a). During this step, "the ALJ must

evaluate all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558 (7th Cir. 2009). In other words, the ALJ must consider the aggregate effect of all of a claimant's impairments, both severe and non-severe. *Arnett v. Astrue*, 676 F.3d 586, 590 (7th Cir. 2012). In doing so, the ALJ follows a two-step determination: (1) whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or symptoms; and (2) evaluate whether the extent that the intensity, persistence, and limiting effects of the claimant's symptoms limit the claimant's functioning. 20 C.F.R. § 404.1529.

Ickes claims that the ALJ failed to build a logical bridge connecting substantial evidence to her RFC decision. Specifically, he states that the ALJ should have found his RFC to be sedentary due to the combination of his heart condition, spinal problems, and other physical limitations (which include chronic kidney disease and diabetes mellitus). [DE 14 at 15-16, and 17 at 4.] However, he bears the burden of proving the disability and presenting medical evidence supporting his allegations. *Castile*, 617 F.3d at 927.

In both of his briefs, Ickes outlines his medical maladies of diabetes mellitus type 2, with complications of nephropathy and neuropathy, coronary artery disease, congestive heart failure, hyperlipidemia, hypertension, spinal issues, back pain, and obesity. [DE 14 at 5-8; DE 17 at 5.] He also highlights his diagnosis of depression which has "been treated variously [sic] with [prescriptions]" and that the Indiana Family and Social Services Administration determined him to be "medically frail" and eligible for

Medicaid. [DE 14 at 8.] But his argument that his RFC should have limited him to sedentary work, is entirely conclusory. *Id*. at 14-15. It is one thing to say that he should have been limited to sedentary work; it is another thing to *prove* it. The "Argument" section of the Ickes opening brief covers less than four pages and does nothing more than cite in some footnotes to a couple places in the record and then concludes that ALJ's "descent into illogic is unmistakable" and that Ickes "is precisely the kind of person the disability laws were meant to protect." These arguments are entirely undeveloped. *See e.g. Fields v. City of Chicago*, 981 F.3d 534, 547 (7th Cir. 2020) (skeletal arguments that are really nothing more than assertions are waived).

Even though Ickes argument is undeveloped, I will nonetheless consider it. Let's start by looking at what the ALJ considered during the RFC step of her analysis. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (describing that the ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning). She followed the necessary two-step process and determined that Ickes's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Ickes's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …" [AR 28-29.] She then pointed to evidence in the record to support this. The ALJ discussed multiple medical records that Ickes highlights in his briefs, including records from his treating doctors, including his

-6-

family nurse practitioner (describing depression, obesity, hypertension, back pain, diabetes mellitus, complications and other medical maladies), nephrologist (concerning kidney disease and other medical maladies), cardiologist (detailing heart conditions, including congestive heart failure), general surgery specialist (regarding a cyst in the chest wall), and spinal specialist. [AR 29-30.] The ALJ noted that the medical records show that Ickes routinely failed to comply with treatment and attend physical therapy. [AR 29.] He was also not recommended for surgery or taking prescriptions to manage the pain and was independent with daily activities. [AR 29, 268-355.] Additionally, when Ickes complied with his diabetes treatment regime, his health improved in that the A1C (a blood sugar number related to diabetes) went from 12.4% to 7.9%. [AR 29.] In addition, the medical records show that Ickes's lumbar spondylosis had no abnormality, fracture or malalignment, his range of motion, muscle strength, and straight leg raising were all normal, his cardiac imaging were normal with no abnormalities or reported chest pain. *Id.*

In addition to the objective medical evidence, the ALJ considered the disability determinations from three state agency physicians—Doctors Fife, Larson, and Gange. [AR 63-70, 72-80]; *see Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (stating "it is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation."). Doctors Fife and Larson assessed Ickes with Type 2 Diabetes, Depression, Social affective Disorder, Diabetic Neuropathy, Degenerative Disc Disease of the lower lumbar spine, chronic back pain, hypertension,

-7-

vitamin D deficiency, high cholesterol, stage 3 kidney disease, normal gait, normal x-rays (apart from the spinal x-ray). [AR 66, 76.] Both physicians found that the combination of Ickes's impairments were not severe enough to consider him disabled, that he is able to take care of his physical needs, perform light cleaning and go shopping weekly, and that he is stable while on medication. [DE 67-70, 77-80.] They found Ickes capable of "adjusting to other work." [AR 69.] On reconsideration, state agency physician Dr. Gange found that Ickes failed to claim his impairments were worsening. [AR 76.]

Also, the ALJ considered Ickes's and his mother's testimony but found their testimony did not line up with the medical evidence. [AR 29-30]; *Dixon v. Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001) ("Because the ALJ is in the best position to observe witnesses, we will not disturb her credibility determinations as long as they find some support in the record."). As noted above, Ickes contends that the combination of impairments makes it impossible for him to perform work greater than a sedentary level. In support, he points to some medical records which the ALJ also cited in her decision. These records support his diagnosis, but not this contention. He cites visits with his family nurse practitioner, cardiologist, nephrologist, and spinal specialists, but none of these doctors state that he is unable to perform work at a greater than sedentary level. Ickes's cardiologist states that, aside from dyspnea, Ickes's class II heart failure is stable and improving. [AR 379.] The nurse practitioner assessed Ickes with depression, degenerative joint disease of lumbar spine, hypertension, chronic kidney disease,

-8-

diabetes mellitus type 2, hypertriglyceridemia without hypercholesterolemia, acid reflux, and chronic low back pain, and referred him to physical therapy for his spinal condition and a dietitian for his type 2 diabetes. [AR 278, 281, 287, 293, 447, 453.] Another doctor cites complications with the kidneys and eyes and referred Ickes to an optometrist and nephrologist. [AR 284.] Ickes's x-ray shows he has mild multilevel degenerative disc disease, lumbar spondylosis, but no acute osseous abnormality, fracture, or malalignment. [AR 318.] This finding is also present in his spinal specialist's notes. [AR 482-83, 545-47.] Ickes also cites his visit with his nephrologist, but this record is not helpful to Ickes' case. A review of it shows that Ickes did not follow up with his doctor for two years while he suffered from kidney disease and back pain, and otherwise indicates a normal physical exam and suggested Ickes change his diet and have additional tests done. [AR 334-38.]

Ickes also points to the Indiana Family and Social Services Administration's determination that he is "medically frail" and eligible for Medicaid. The ALJ addressed this finding in her decision. [AR 30, 407.] While Medicaid and social security benefits may factually overlap in some areas, findings by the state in Medicaid proceedings are not binding on the Commissioner in federal social security proceedings. Whether a claimant is disabled is an issue reserved for the Commissioner. *Gidon v. Astrue*, 260 F. App'x 927, 929 (7th Cir. 2008); 20 C.F.R. § 404.1527(d). Therefore, the ALJ properly considered this point in her decision.

In sum, in step four of the disability evaluation, the ALJ properly considered all of Ickes's severe and non-severe impairments in determining whether Ickes could perform his past work. The ALJ discussed Ickes's treatment history which supported a restriction to light-level work with certain limitations. [AR 28.] Contrary to his claims, the medical records do not support that he was incapable of working at an above-sedentary level. Therefore, I find there is substantial evidence to support the ALJ's decision.

## Conclusion

For the foregoing reasons, the final decision of the Commissioner of Social Security is **AFFIRMED**.

SO ORDERED on March 8, 2021.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT